UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 02-23090-MARTINEZ-KLEIN

FELIX R. MEDINA, et. al.,

   Plaintiffs,

vs.

3C CONSTRUCTION CORP., CUVEN CORP.,
AUSTIN COMMERCIAL, INC. and TURNER
CONSTRUCTION COMPANY,

   Defendants.
_____/



## ORDER DENYING IN PART AND GRANTING IN PART TURNER-AUSTIN'S MOTION FOR SANCTIONS

THIS CAUSE came before the Court upon Motion by Defendants Turner Construction Company and Austin Commercial, Inc. (collectively referred to as "Turner-Austin"), for Rule 11 Sanctions against Plaintiffs and Plaintiffs' Counsel (**D.E. No. 88**), filed March 13, 2003, and Turner-Austin's Supplemental Motion for Sanctions and Attorneys' Fees and Costs (**D.E. No. 735-1 and 735-2**), filed September 30, 2005. For the reasons discussed below, Turner-Austin's Motions are **DENIED in part, and GRANTED in part.**

### BACKGROUND

This case was brought by a group of Plaintiffs under the Fair Labor Standards Act, 29 U.S.C. §201 et. seq. ("FLSA"). Plaintiffs alleged that they worked between five and fourteen uncompensated hours per week for various Defendants. Specifically, the Plaintiffs alleged that they were entitled to be paid for the hours that they spent traveling on buses between the parking lot and the job site at the North Terminal Project at Miami International Airport. The Plaintiffs sued several

Defendants for minimum wages, straight time wages and overtime wages for those hours spent in transit between the parking lot and the job site.

Fairly early in the proceedings, Turner-Austin moved for sanctions against Plaintiffs, arguing that Plaintiffs' claims were based on "groundless and patently frivolous allegations." (D.E. No. 88, p. 3). Turner-Austin argued that Plaintiffs had no evidence to show that Turner-Austin was the Plaintiffs' employer for purposes of liability under the FLSA. The Court deferred ruling on the motion. Following extensive discovery, Turner-Austin moved for summary judgment, and in August 2005, District Judge Lenard entered an Order granting summary judgment in favor of Turner-Austin. (D.E. No. 683).

Following the entry of the Order granting summary judgment, Turner-Austin renewed and supplemented its motion for sanctions against Plaintiffs and Plaintiffs' counsel. In its renewed motion, Turner-Austin reiterates its earlier argument that Plaintiffs' claim against it were frivolous, and adds an allegation that Plaintiffs' counsel had attempted to "fabricate and manufacture evidence to create liability against TURNER-AUSTIN." (D.E. No. 735, p. 5). Each basis for sanctions is addressed below.

## ANALYSIS

### I. Legal Standards for Rule 11 Sanctions

Rule 11 of the Federal Rules of Civil Procedure provides that by signing a pleading, motion, or other paper presented to the court, the party signing is certifying that the claim asserted is neither frivolous nor brought for an improper purpose. Fed. R. Civ. P. 11(b). The Rule further provides that if a party violates that certification a court may, after notice and an opportunity for the offending party to respond, impose sanctions. Fed. R. Civ. P. 11(c).

The Eleventh Circuit has declared that

> There are only "three types of conduct [that] warrant Rule 11 sanctions: (1) when a party files a pleading that has no reasonable factual basis; (2) when a party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and (3) when the party files a pleading in bad faith for an improper purpose.

Mike Ousley Productions, Inc. v. WJBF-TV, 952 F.2d 380, 383 (11th Cir. 1992), citing Pelletier v. Zweifel, 921 F.2d 1465 (11th Cir. 1991). The court has further explained that

> In this circuit, a court confronted with a motion for Rule 11 sanctions first determines whether the party's claims are objectively frivolous--in view of the facts or law--and then, if they are, whether the person who signed the pleadings should have been aware that they were frivolous; that is, whether he would have been aware had he made a reasonable inquiry.

Worldwide Primates v. McGreal, 87 F.3d 1252, 1254 (11th Cir. 1996).

Courts have also recognized a "bad faith" application of sanctions in circumstances where a party's conduct during the proceedings so warrants. Courts have repeatedly cautioned, however, that bad conduct by an attorney will not necessarily justify sanctions against the party itself. Byrne v. Nezhat, 261 F.3d 1075, 1123 (11th Cir. 2001)("Sanctionable conduct by a party's counsel does not necessarily parlay into sanctionable conduct by a party"); see Donaldson v. Clark, 819 F.2d 1551, 1557 (11th Cir. 1987) (explaining that it is advisable to avoid a sanction that penalizes the parties for the offenses of their counsel); M.E.N. Co. v. Control Fluidics, Inc., 834 F.2d 869, 873 (10th Cir. 1987) ("Where sanctions are concerned, ... we have cautioned that 'if the fault lies with the attorneys, that is where the impact of the sanction should be lodged.'" (citation omitted)).

**II.     Turner-Austin's Motion for Sanctions Based upon Frivolous Claims**

Applying Eleventh Circuit standards to the facts at hand, this Court finds that Plaintiffs'

3

Claims are not objectively frivolous, and will therefore not impose sanctions against Plaintiffs or Plaintiffs' counsel on that basis.

In her Order on summary judgment, District Judge Lenard spent considerable time analyzing whether Turner-Austin was a legal employer of the Plaintiffs. She set out in extensive detail precisely what Turner-Austin did and did not do in terms of supervising the Plaintiffs:

> The following are examples of ways in which Turner-Austin monitors activities as construction manager of the Project. Turner-Austin has a billboard that shows employees that they have to wear a hard-hat and safety glasses, long pants and work boots and a long sleeved shirt. Burke Dep. at 33. Turner-Austin field inspectors look on a daily basis at the work performed to check such issues as the materials being used, the quality of the work, and the progress as compared to the schedule of the particular project. Id. at 24, 25; see also Pastrana Dep. at 12-13. Turner-Austin field inspectors' primary contact is with the general contractor superintendent. (Pastrana Dep. at 4, 9.) The Turner-Austin field inspectors assist in coordinating the efforts across contractors (e.g electricians, plumbers, etc.) so that work may proceed in an organized and efficient process. (Fornes Dep. at 21-22.) The Turner-Austin safety inspectors monitor on a daily basis the general contractors' work to ensure compliance with safety standards. (Gerard Dep. at 9.) OSHA, the FAA, M-DAD, and OCIP have ultimate authority on safety compliance issues. Id. at 39. The primary interaction of a Turner-Austin safety inspector is with the safety representative of the general contractor. (Miller Dep. at 6-7; see also Gerard Dep. at 9-10, 11.) That said, Turner-Austin safety inspectors will directly contact a subcontractor employee if it is a life threatening situation. (Miller Dep. at 8; see also Gerard Dep. at 10, 34; Palacio Dep. at 9.) Two field safety inspectors for Turner-Austin stated that they would directly speak to a subcontractor on any safety violation. (D.E. 167, Palacio Dep. at 9-10; Fornes Dep. at 6, 8.) Both further qualified that the subcontractors' supervisors or safety representatives would handle disciplining their employees. Id. at 11, 19; see also Miller Dep. at 8; Fornes Dep. at 8. Nonetheless, if a safety violation was serious enough, then a Turner-Austin inspector could, hypothetically, request that a subcontractor employee remove his badge, which would thereby require the employee to leave the premises of the Project. (Fornes Dep. at 11-12.)
>
> Turner-Austin provided the following examples of ways in which it

> did not manage, direct or act as the employer of the Plaintiffs. Turner-Austin provided no printed material to subcontractor employees regarding their work at the Project. (Burke Dep. at 84.) Turner-Austin did not determine, nor did it control the Plaintiffs' work. (D.E. 107, Burke Aff. at ¶ 6.) Turner-Austin did not decide the work hours for the Plaintiffs(Burke Dep. at 96, Burke Aff. at ¶ 7; D.E. 175, Casariego Dep. at 79); nor did it determine where the Plaintiffs would work, how much the Plaintiffs would be paid or how long each Plaintiff would work on the Project (Burke Dep. at 96, Burke Aff. at ¶ 8; Casariego Dep. at 82). Turner-Austin did not provide the Plaintiffs with specific instructions on how to perform their work on the Project, nor did it directly supervise the Plaintiffs' work. (Burke Dep. at 97, Burke Aff. at ¶ 8, Casariego Dep. at 82). Turner-Austin did not dictate who 3C Construction Corp. and/or Cuven should hire, nor how many employees should be hired for work on the Project. (Burke Aff. at ¶ 9; Casariego Dep. at 82.) Turner-Austin did not know how 3C Construction Corp. and/or Cuven designed their employees' management structure, nor did it exert any control over those decisions, including any right to fire, hire or modify the employment condition of the Plaintiffs, or the preparation of payroll, the payment of wages, the determination of pay notes or methods of payment for the Plaintiffs. (Burke Aff. at ¶¶ 11, 12.) Turner-Austin did not provide any of the large machinery utilized by the subcontractor employees (Burke Dep. at 99); nor did Turner-Austin provide the safety gear, tools or materials used by the subcontractors (Pfister Dep. at 5; Gerard Dep. at 28;Casariego Dep. at 52-54).

(D.E. No. 683, p. 8-10).

In the analysis of Turner-Austin's employer status Judge Lenard first acknowledged that "The FLSA recognizes that employees, such as the Plaintiffs, may have two or more employers at the same time . . . [and that] A determination of whether the employment by two or more employers constitutes joint employment for purposes of the Act depends "upon all the facts in the particular case." (D.E. No. 683, p. 15-16). Judge Lenard then set forth the factors used in Eleventh Circuit analyses for joint employment under the FLSA:

> (a) nature and degree of control over the putative employee;
> (b) degree of supervision, direct or indirect, of the employee's work;

> (c) power to determine the pay rates or the methods of payment of the worker'
> (d) right, directly or indirectly, to hire, fire, modify the employment conditions of the worker;
> (e) preparation of payroll and the payment of wages;
> (f) investment in equipment and facilities;
> (j) ownership of property or facilities where work occurred; and
> (k) whether the worker performed of a job integral to the business of the putative employer.

Id. Finally, Judge Lenard engaged in a painstaking analysis of each factor, and determined whether each one weighed in favor of the Plaintiffs' or Defendants' position. (D.E. No. 683, p. 17-28).

Judge Lenard ultimately held that Turner-Austin was not the Plaintiffs' employer, and therefore Plaintiffs' FLSA claims against it could not stand. However that decision was not easily reached, and involved a level of depth and analysis which substantially undercuts Turner-Austin's position that Plaintiffs' claims against it were frivolous.

Turner-Austin cites a number of cases in which federal courts imposed Rule 11 sanctions in support of its position that Plaintiffs' claims against them are so frivolous as to warrant sanctions. However, all of these cases involve scenarios where parties either had actual knowledge that their claims were baseless, had no reasonable basis to believe their claims were legitimate, or had no evidence whatsoever to support their claims. See, e.g., Mike Ousley Productions, Inc. v. WJBF-TV, 952 F.2d 380 (11th Cir. 1992)(finding a claim frivolous where individual defendants had no connection with corporate defendant sufficient to establish liability, and plaintiff therefore had no reasonable basis for naming those defendants); Worldwide Primates, Inc. v. McGreal, 87 F.3d 1252 (11th Cir. 1996)(plaintiffs' tortious interference claim was frivolous where plaintiff had no evidence whatsoever of damages); Susman v. Salen Saxon and Nielson, P.A, 818 F. Supp. 1510, 1516 (M.D. Fla. 1993)(claim was frivolous when plaintiffs knew that allegations against certain defendants were

6

false); Aetna Ins. Co. v. Meeker, 953 F.2d 1328 (11th Cir. 1992)(claim was frivolous where plaintiff had no evidence to support the claim, and where the court found plaintiff's unsubstantiated theories to be "implausible" and "incredible").

In the case at bar, while Plaintiffs' claims were ultimately found to be unsupported by the evidence, there is no indication that either Plaintiffs or Plaintiffs' counsel had actual knowledge of their falsity. The fact of Defendants' early warnings to Plaintiffs' counsel do not make it so; Plaintiff's counsel was not required to accept Defendants' word, and he had at least a colorable basis to pursue his claim that Austin-Turner was a joint employer. Plaintiffs' claims were neither implausible nor incredible; there was certainly some evidence to suggest that Turner-Austin could be considered a dual employer under the FLSA, as is evidenced by Judge Lenard's thorough and detailed analysis. This is aside from Plaintiffs' counsel's attempts to bolster his position with improper answers to interrogatories, which the court addresses below. The fact that evidence did not ultimately support Plaintiffs' position and that Turner-Austin obtained summary judgment on the issue is not a sufficient basis to render Plaintiffs' claim so frivolous as to warrant Rule 11 sanctions. Gaiardo v. Ethyl Corp., 835 F.2d 479, 483 (3d Cir. 1987)("Rule 11 sanctions awarding counsel fees do not automatically or usually follow an adverse judgment or ruling. Substantially more is required").

### III. Turner-Austin's Motion for Sanctions Based Upon Plaintiffs' Counsel's Alleged Falsification of Evidence

Turner-Austin raises very serious, well-founded allegations against Plaintiffs' counsel, claiming that Plaintiffs' counsel drafted false responses to interrogatories on behalf of numerous Plaintiffs. In support of this allegation, Turner-Austin has presented samples of numerous

interrogatory answers in which each Plaintiff attested that "Turner Austin had an inspector on site everyday, and was always pressuring us to finish the work on time." (D.E. No. 735, p. 14). Turner-Austin then presented deposition excerpts from these same Plaintiffs, in which they disavowed the statements made in the interrogatory, and denied having ever answering that question. For example, one Plaintiff who answered the interrogatory as described above testified in deposition, "They never hurried me to finish a job. I don't know if they did it to another person." When asked if the statement in response to the interrogatory was false, the Plaintiff replied that it was. Another Plaintiff, answering as above, denied ever being hurried by Turner-Austin personnel, and denied ever answering the interrogatory in question:

> Q: Did Turner Austin ever pressure you to finish work at a certain time?
> A: No.
>
> (The interrogatory answer was translated from English to Spanish, and read to the Plaintiff)
>
> Q: Is that a true statement?
> A: No.
> Q: Is this a statement that you made?
> A: No.
> Q: You never made that statement?
> A: No.

And another:

> Q: So if this answer says something different, is this answer incorrect?
> A: Well, I don't know if it's incorrect. I don't know who wrote it there. But at least for my case, it never happened.

This Court examined the interrogatory responses and deposition transcripts for approximately 20 Plaintiffs in this case, and discovered that while the Plaintiffs uniformly answered the interrogatory, at deposition nearly every Plaintiff acknowledged that the answer was false, and most

8

denied that they ever answered the question. Numerous Plaintiffs--all native Spanish speakers with limited English skills--also stated at deposition that they had never seen the interrogatories in Spanish, but were merely told what the questions said.

This Court has grave misgivings about the conduct of Plaintiffs' counsel in connection with the interrogatory answers. As noted, this Court has investigated the evidence in the record; the allegations are well supported, and are essentially unrefuted by Plaintiffs' counsel in his response to Turner-Austin's motion. While Plaintiffs' counsel refers to the accusations as "vexatious, false and malicious," Plaintiffs' counsel at no time even attempts to explain the discrepancy between the interrogatory responses and the deposition testimony.

This Court's concerns notwithstanding, the application of Rule 11 sanctions is not appropriate in this case. As discussed above, Rule 11 provides for sanctions upon a signing party--whether client or counsel--for making claims which are frivolous or brought for improper purpose. Plaintiffs' counsel did not sign the interrogatories; they were signed by the Plaintiffs. In any event, Rule 11 specifically excludes discovery responses from its coverage. See Rule 11(d). Moreover, the situation here does not lend itself to sanctions against the Plaintiffs themselves. The evidence suggests that the Plaintiffs--who signed the interrogatories--may not have been aware of the content of the questions, or the answers provided. The interests of justice would not be served by imposing sanctions against the Plaintiffs for the improper actions of their counsel.

While Rule 11 is not the appropriate vehicle by which to impose sanctions in this case, this Court has determined that the gravity of the offense mandates sanctions against Plaintiffs' counsel. 28 U.S.C. §1927, as well as the established inherent authority of the court, provides this Court with the power to impose such sanctions. While the language of Section 1927 specifically refers to

sanctions against an attorney who multiplies pleadings in an unreasonable or vexatious manner, numerous courts have held that the statute provides authority for the imposition of sanctions for any bad-faith conduct by an attorney. One district court explained that

> Under section 1927, an award of attorneys' fees may be exacted from an attorney (i.e., a nonparty) if counsel acted "recklessly or in bad faith."

In re Beverly Hills Bancorp, 752 F.2d 1334, 1340 (9th Cir. 1984), citing United States v. Blodgett, 709 F.2d 608, 610 (9th Cir. 1983), quoting Barnd v. City of Tacoma, 664 F.2d 1339, 1343 (9th Cir. 1982). See Premier Commercial Corp. v. FMC Corp., 139 F.R.D. 670, 674 (N. D. Cal. 1991)(court had power to impose monetary sanctions against attorney who misrepresented legal authority).

Moreover, the United States Supreme Court has expressly stated that

> There is, therefore, nothing in the other sanctioning mechanisms or prior cases interpreting them that warrants a conclusion that a federal court may not, as a matter of law, resort to its inherent power to impose attorney's fees as a sanction for bad-faith conduct. This is plainly the case where the conduct at issue is not covered by one of the other sanctioning provisions. But neither is a federal court forbidden to sanction bad-faith conduct by means of the inherent power simply because that conduct could also be sanctioned under the statute or the Rules. A court must, of course, exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees, see Roadway Express, supra, at 767. Furthermore, when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power. But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power.

Chambers v. NASCO, 501 U.S. 32, 50 (U.S. 1991).

## CONCLUSION

Under the circumstances here, this Court finds sanctions against Plaintiffs' counsel are

appropriate: the only question remaining is the amount. The rules, statutes, and the court's power allow for an award of attorneys' fees to reimburse a party who was forced to litigate against counsel who acted recklessly or in bad faith. However, this Court does not find that Plaintiffs' claim was itself frivolous; rather, the actions of Plaintiffs' counsel in regard to the interrogatory answers was at least reckless, and at worst the essence of bad faith. In order to determine the amount of sanctions, this Court requires Turner-Austin to submit a detailed statement of expenses incurred as a result of Plaintiffs' counsel's actions regarding the interrogatories.

**ORDERED and ADJUDGED** that Turner-Austin's Motion for Rule 11 Sanctions against Plaintiffs and Plaintiffs' Counsel (**D.E. No. 88**), and Turner-Austin's Supplemental Motion for Sanctions and Attorneys' Fees and Costs (**D.E. No. 735-1 and 735-2**), are **DENIED in part** and **GRANTED in part** to the extent aforesaid. Turner-Austin shall submit to the Court a statement with necessary supporting documentation, outlining the fees incurred as a result of the actions found sanctionable herein.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 27 day of March, 2006.

THEODORE KLEIN
UNITED STATES MAGISTRATE JUDGE

Copies provided to:
District Judge Martinez
All Counsel of Record