UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 02-23090-CIV-MARTINEZ/TORRES

FELIX R. MEDINA, et. al.,

    Plaintiffs,

vs.

3C CONSTRUCTION CORP., CUVEN CORP., AUSTIN COMMERCIAL, INC. and TURNER CONSTRUCTION COMPANY,

    Defendants.

_____/

**<u>FINAL REPORT AND RECOMMENDATION ON
MOTION FOR SANCTIONS</u>**

This matter comes before the Court upon Turner-Austin's Detailed Statement of Expenses in Compliance with Court's Order Dated March 27, 2006 [D.E. 871], that followed Magistrate Judge Klein's Order [D.E. 855] that granted in part and denied in part Defendant Turner Construction Co.'s Motion for Rule 11 Sanctions. Judge Klein's Order found Plaintiff's counsel liable for sanctions under 28 U.S.C. § 1927. Following a subsequent hearing held on August 31, 2006, before the undersigned Magistrate Judge that was convened to determine the appropriate amount of sanctions to award, this matter is now fully ripe. Pursuant to the District Judge's Order of Reference [D.E. 793], and as entry of a sanction judgment is required, the matter will be addressed here by way of a Report and Recommendation.

## *I. BACKGROUND*

This case was filed by a group of Plaintiffs under the Fair Labor Standards Act, 29 U.S.C. § 201 et. seq. ("FLSA"). Plaintiffs alleged that they worked between five and fourteen uncompensated hours per week for various named Defendants. Specifically, the Plaintiffs alleged that they were entitled to be paid for the hours that they spent traveling on buses between the parking lot and the job site at the North Terminal Project at Miami International Airport. The Plaintiffs sued several Defendants, contractors retained for that project, for minimum wages, straight time wages and overtime wages for those hours spent in transit between the parking lot and the job site.

Fairly early in the proceedings, Defendant Turner-Austin Construction Co. ("Turner-Austin") moved for sanctions against Plaintiffs, arguing that Plaintiffs' claims were based on "groundless and patently frivolous allegations." [D.E. 88, p. 3]. Turner-Austin argued that Plaintiffs had no evidence to show that Turner-Austin was the Plaintiffs' "employer" for purposes of liability under the FLSA. The Court deferred ruling on the motion. Following extensive discovery, Turner-Austin moved for summary judgment, and in August 2005 and prior to her recusal, the Honorable Joan A. Lenard entered an Order granting summary judgment in favor of Turner-Austin. [D.E. 683].

Following the entry of the Order granting summary judgment, Turner-Austin renewed and supplemented its motion for sanctions against Plaintiffs and Plaintiffs' counsel. In its renewed motion, Turner-Austin reiterated its earlier

argument that Plaintiffs' claim against it was frivolous, and added an allegation that Plaintiffs' counsel had attempted to "fabricate and manufacture evidence to create liability against TURNER-AUSTIN." [D.E. 735 at 5]. Turner-Austin alleged that it became apparent during the course of Plaintiffs' depositions that Plaintiffs' counsel fabricated a false answer that was uniformly provided in the first set of interrogatories served on all of the original Plaintiffs[1] who were employed by 3C Construction Corporation in an attempt to impose liability on co-defendant Turner-Austin.

>Specifically, the interrogatory in question stated:

>Please identify all facts which you are aware of that support the Plaintiffs' allegation that 'Turner-Austin decide [sic] and established the work hours for the Plaintiffs through contracts entered into with the other two Defendants named 3-C Construction Corp. and Cuven Corp.[']

[D.E. 735 at 14]. All of the original Plaintiffs answered: "Turner Austin had an inspector on site everyday, and was always pressuring us to finish the work on time." *Id.*

At deposition, however, nearly all of the Plaintiffs disavowed the response to the interrogatory. In response to the supplemental motion for sanctions, Judge Klein entered an Order denying Turner-Austin's motion for sanctions under Rule 11, but granted the motion with respect to its claim that Plaintiffs' counsel, Jamie

---

[1] The subject interrogatory was never served on the Plaintiffs that opted into the class action later in the litigation. It also was not served on the Plaintiffs who were employed by Cuven Corporation. Only the 3C Construction Corporation employees were served with the interrogatory.

3

Zidell, Esq., fabricated the false interrogatory answer, finding that Mr. Zidell's conduct was sanctionable under 28 U.S.C. § 1927. [D.E. 855]. The Court reserved setting the amount of the sanction pending receipt of Turner-Austin's statement outlining the fees it incurred as a result of Plaintiffs' false answer to the subject interrogatory question. *Id.*

## II. FINDINGS OF FACT

As Judge Klein found in his Order Denying in Part and Granting in Part Turner-Austin's Motion for Sanctions, Turner-Austin raises very serious, well-founded allegations against Plaintiffs' counsel.[2] In support of its allegations, Turner-Austin has presented samples of numerous interrogatory answers in which each Plaintiff attested that "Turner Austin had an inspector on site everyday, and was always pressuring us to finish the work on time." [D.E. 735 at 14]. Turner-Austin then presented deposition excerpts from these same Plaintiffs, in which they disavowed the statements made in the interrogatory, and even denied having ever answered that question.

For example, one Plaintiff who answered the interrogatory as described above testified in deposition, "They never hurried me to finish a job. I don't know if they did it to another person." When asked if the statement in response to the interrogatory was false, the Plaintiff replied that it was. Another Plaintiff,

---

[2] Judge Klein's entire findings and conclusions of law contained in the March 27, 2006 Order [D.E. 871] are fully incorporated herein.

answering as above, denied ever being hurried by Turner-Austin personnel, and denied ever answering the interrogatory in question:

> Q: Did Turner Austin ever pressure you to finish work at a certain time?
> A: No.
>
> (The interrogatory answer was translated from English to Spanish, and read to the Plaintiff)
>
> Q: Is that a true statement?
> A: No.
> Q: Is this a statement that you made?
> A: No.
> Q: You never made that statement?
> A: No.

And another:

> Q: So if this answer says something different, is this answer incorrect?
> A: Well, I don't know if it's incorrect. I don't know who wrote it there. But at least for my case, it never happened.

This Court examined the interrogatory responses and deposition transcripts for approximately twenty Plaintiffs in this case. This review revealed that while the Plaintiffs answered the interrogatory identically, at deposition nearly every Plaintiff acknowledged that the answer was false, and most denied that they ever answered the question. Numerous Plaintiffs – all native Spanish speakers with limited English skills – also stated at deposition that they had never seen the interrogatories in Spanish, but were merely told what the questions said.

Judge Klein and the undersigned investigated the evidence in the record. The allegations are well supported and are practically unrefuted by Plaintiffs'

counsel in his response to Turner-Austin's motion. While Plaintiffs' counsel refers to the accusations as "vexatious, false and malicious," Plaintiffs' counsel at no time disputes the discrepancy between the interrogatory responses and the deposition testimony. Judge Klein found, and the undersigned agrees, that Plaintiffs' counsel, Mr. Zidell, acted recklessly by preparing false responses to the subject interrogatory. Our finding follows binding precedents in this circuit that recognize that deliberate fraud or misconduct or gross recklessness constitutes sanctionable bad faith. *See Amlong & Amlong, P.A. v. Denny's, Inc.*, 457 F.3d 1180, 1190 (11th Cir. 2006); *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1544 (11th Cir. 1993).

Mr. Zidell does not dispute the underlying fact that his clients disavowed any knowledge of or truthfulness in the interrogatory answer that Mr. Zidell prepared. Mr. Zidell chose not to dispute his clients' testimony; rather, he explained that *his* drafting of the interrogatory answer was a reflection of his understanding of the entire record in the case. Because a party must provide under Rule 33 all facts known by the party and its counsel in response to an interrogatory question, Mr. Zidell argues that the answer in question was simply his attempt at clarifying the record.

Judge Klein found, and the undersigned agrees, that this explanation is not sufficient to survive section 1927 review for the simple reason that Mr. Zidell never made clear in his own interrogatory "answer" that this was factual information (as opposed to conclusory argument) known to counsel through certain other means.

Had the interrogatory answer clarified the source of the information in any way, then perhaps Mr. Zidell's explanation now would carry more water. The problem, of course, is that the answer as drafted never made that assertion; instead, it was written as if each individual plaintiff who answered and attested to it was swearing to the facts provided based on his personal knowledge. That is clearly the message that the answer communicates, and a message that turned out to be entirely false. In response to that message, which was the product of sheer recklessness on counsel's part, Turner-Austin was prejudiced.

Faced with these findings of fact and Judge Klein's Order, the undersigned must now determine the level of prejudice that Turner-Austin suffered and what remedy should be ordered.

### III.  ANALYSIS

#### A.  *Legal Standard for Sanctions Under 28 U.S.C. § 1927*

28 U.S.C. § 1927, as well as the established inherent authority of the court,[3] provides this Court with the power to impose sanctions for counsel's bad faith fabrication of evidence. While the language of section 1927 specifically refers to

---

[3] *See Chambers v. NASCO*, 501 U.S. 32, 50 (1991) ("[W]hen there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power. But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power."); *see also Neiman v. Automobili Lamborghini Exclusive, Inc.*, 307 F.3d 1332, 1335 (11th Cir. 2002) ("Courts have the inherent authority to control the proceedings before them, which includes the authority to impose 'reasonable and appropriate' sanctions."); *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) ("The key to unlocking a court's inherent power is a finding of bad faith.").

7

sanctions against an attorney who multiplies pleadings in an unreasonable or vexatious manner, that language has been universally defined as authorizing the imposition of sanctions for any reckless or bad-faith conduct by an attorney. *See Amlong & Amlong, P.A.*, 457 F.3d at 1190; *In re Beverly Hills Bancorp*, 752 F.2d 1334, 1340 (9th Cir. 1984) ("Under section 1927, an award of attorneys' fees may be exacted from an attorney (i.e., a nonparty) if counsel acted 'recklessly or in bad faith.'") (citations omitted); *see, e.g., Premier Commercial Corp. v. FMC Corp.*, 139 F.R.D. 670, 674 (N. D. Cal. 1991) (court had power to impose monetary sanctions against attorney who misrepresented legal authority). As one court explained: "Suits are easy to file and hard to defend. The best way to control the unjustified tactics in litigation is to ensure that those who create costs also bear them. When an attorney recklessly creates needless costs, the other side is entitled to relief." *In re TCI Ltd.,* 769 F.2d 441, 445 (7th Cir. 1985).

On the other hand, section 1927 it is not a sanctioning mechanism for any objectionable conduct by counsel. *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003) (citing *Peterson v. BMI Refractories*, 124 F.3d 1386, 1390 (11th Cir. 1997)). The alleged sanctionable conduct must be unreasonable and vexatious and increase the number of proceedings. *Id.* At the same time, "the amount of the sanction cannot exceed the costs occasioned by the objectionable conduct." *Id.* That determination requires that an attorney facing possible sanctions under Section 1927 be granted an evidentiary hearing. *Amlong &*

8

*Amlong, P.A. v. Denny's, Inc.*, 457 F.3d 1180, 1193 (11th Cir. 2006) (citing *Reynolds v. Roberts*, 207 F.3d 1288, 1302 (11th Cir. 2000)).

### B. *Remedy Required by the Objectionable Conduct*

Although Mr. Zidell is entitled to an evidentiary hearing, he waived this right during the August 31st hearing and elected to proceed based on the ample record amassed in this matter. As such, the Court's findings here are based upon the record as it has been developed during the course of this litigation.

Because Judge Klein denied Turner-Austin's motion for sanctions under Rule 11 and found a basis to impose sanctions on Mr. Zidell only under section 1927 and the false interrogatory answer, the Court must examine how the interrogatory answer affected Turner-Austin's defense. In this regard, the Court has carefully reviewed the case file to determine how much time and effort Turner-Austin had to expend to defend itself that was proximately caused by Mr. Zidell's interrogatory answer. Although Mr. Zidell's fabrication of evidence falls on the serious side of the spectrum of possible objectionable conduct, the Court will not grant Turner-Austin the full amount of fees and costs it requests given that the interrogatory answer played a far less significant role in the amount of work counsel was required to do to defend his client in this case.

As previously noted, the Eleventh Circuit requires that the amount of the sanction be reasonably related to the costs occasioned by the objectionable conduct. *Schwartz*, 341 F.3d at 1225. By this standard, the Court finds that the false interrogatory answer did not occasion materially significant expenses in

9

Turner-Austin's defense strategy. Indeed, most of the expenses Turner-Austin incurred in connection with the response relate to litigating the relevant portion of its supplemental motion for sanctions.

Turner-Austin filed its first motion for sanctions on March 13, 2003, approximately five months after Plaintiffs filed their Complaint. Plaintiffs were served with Defendants' Interrogatories on March 6, 2003, and served their answer around early to mid-May. At this point in the litigation, Turner-Austin did not, and could not, seek sanctions based on the false interrogatory answer as the answer had not yet been provided to them. Turner-Austin's motion for sanctions only argued that Rule 11 sanctions were appropriate based on the allegedly frivolous claim that Plaintiffs filed against it in the case. The Court ultimately found that Rule 11 sanctions were inappropriate and denied that part of Turner-Austin's motion.

Turner-Austin then filed its motion for summary judgment on May 2, 2003. Turner-Austin also did not receive Plaintiffs' answers to the interrogatories before it filed for summary judgment. The false interrogatory answer was served on Turner-Austin around May 6, 2003. Turner-Austin began deposing Plaintiffs and asking questions regarding the false interrogatory answer on July 15, 2003.[4] Three days later, on July 18, 2003, Plaintiffs filed their response to Turner-

---

[4] Turner-Austin deposed other Plaintiffs on July 18, August 8, August 13, September 12, October 28, and December 9. Only the July 15 and July 18 depositions took place before Turner-Austin received Plaintiffs' response to Turner-Austin's summary judgment motion.

10

Austin's summary judgment motion. Significantly, Plaintiffs did not rely on the false interrogatory answer to defeat summary judgment. Although, at this point, Turner-Austin knew that Plaintiffs were not using the false interrogatory answer to attempt to keep Turner-Austin in the litigation, it decided to continue deposing Plaintiffs to ask them generally about Turner-Austin's involvement in their employment and specifically about the subject interrogatory answer.

Ultimately, the Court granted summary judgment in favor of Turner-Austin on August 24, 2005. The false interrogatory answer was not brought to the Court's attention by either party and the Court never considered them in its Order granting summary judgment.

Turner-Austin now argues, notwithstanding this record, that it incurred $68,809.45 in expenses as a result of having to address the false interrogatory answer and that Plaintiffs' counsel should have to reimburse it for all those expenses. Specifically, Turner-Austin asks for $973.50 for the fees incurred by its lawyers to review the false interrogatory response. It then asks for $7,641.32 for the time its lawyers spent preparing for and attending depositions of Plaintiffs who submitted the false interrogatory response. It then asks for $15,547.93 for the time its lawyers spent preparing for and attending depositions of Plaintiffs who did not submit the false interrogatory response.[5] And, finally, Turner-Austin asks

---

[5] At the hearing, Turner-Austin argued that it was necessary to attend these depositions to find out whether these Plaintiffs would affirm what other Plaintiffs had disavowed.

11

for $44,646.70 for the time its lawyers spent preparing the supplemental motion for sanctions.

The Court finds that most of these fees were incurred in the normal course of litigation and were not proximately caused by the false interrogatory answer. Under *Schwartz*, the Court cannot impose a sanction that exceeds the costs occasioned by the false interrogatory response. Therefore, the Court will limit the sanction to only the actual expenses Turner-Austin incurred in reviewing that one interrogatory and its response, asking questions about the subject interrogatory at the July 15th and July 18th depositions and preparing the portion of the supplemental motion for sanctions that deals with the false interrogatory response. The Court will only award fees in connection with these two groups of depositions as it became clear on July 21st, when Mr. Zidell served his response to Turner-Austin's motion for summary judgment, that Plaintiffs were not going to rely on the false interrogatory answer to defeat summary judgment. Turner-Austin's decision to go forward with the remaining depositions was, therefore, not proximately related to the false interrogatory response. The time spent on those depositions was undoubtedly necessary, but it was not attributable to Mr. Zidell's sanctionable conduct.

Turner-Austin submitted time entries in response to Judge Klein's Order, which purport to reflect the time its attorneys spent reviewing the false interrogatory answer. These time entries are compiled as Exhibit D of Turner-Austin's Detailed Statement of Expenses in Compliance with Court's Order Dated

March 27, 2006. The Court finds that Exhibit D also includes Turner-Austin's review of all of Plaintiffs' interrogatory responses and not just the time it spent reviewing the false interrogatory response in question. Consequently, as nine interrogatories were served on each of the Plaintiffs, the Court will award one-ninth of Turner-Austin's expenses related to reviewing interrogatories specifically, rather than to the entire discovery process.

Plaintiffs filed their response to Turner-Austin's motion for summary judgment on July 18, 2003, three days after Turner-Austin began deposing the first batch of Plaintiffs. Turner-Austin decided to proceed with the depositions it scheduled on August 8, August 13, September 12, October 28 and December 9 even after it received Plaintiffs' response, which does not rely on the false interrogatory answer to defeat Turner-Austin's motion for summary judgment. Evidently, Turner-Austin did not participate in these depositions simply to ask the individual Plaintiffs about the false interrogatory answer. During the depositions, counsel asked Plaintiffs a myriad of questions regarding their overall relationship to Turner-Austin. For example, Plaintiffs were asked by Turner-Austin's counsel to state who had hired them, who gave them their paychecks each week, whether they ever gave any paperwork to Turner-Austin, or whether they ever gave Turner-Austin an employment application. None of these questions are directly or proximately related to the false interrogatory answer; rather, these questions relate to the overall alleged frivolity of Plaintiffs' claims and support the thrust of Turner-Austin's defenses.

Again, the Court determined previously that Plaintiffs' claims against Turner-Austin were not entirely frivolous under Rule 11 and, consequently, any expenses incurred in defending Turner-Austin generally cannot be the basis of sanctions imposed here under section 1927. As such, it would be improper for the Court to impose sanctions on Mr. Zidell equivalent to the entire amount of expenses incurred by Turner-Austin as a result of participating in these depositions. *E.g., Peterson v. BMI Refractories,* 124 F.3d at 1386 ("[T]he dollar amount of the sanction must bear a financial nexus to the excess proceedings, i.e., the sanction may not exceed the 'costs, expenses, and attorneys' fees reasonably incurred because of such conduct.'").

Accordingly, the Court finds that only the depositions of July 15, 2003, and July 18, 2003, are reasonably connected to the false interrogatory answer as Turner-Austin did not know at that point whether Plaintiffs would rely on the interrogatory answer Mr. Zidell fabricated in defeating its motion for summary judgment. Sanctions will only be imposed on Mr. Zidell for these two days of deposition testimony; the sanctions will be further limited to the number of pages of deposition transcript that Turner-Austin produced in asking about the false interrogatory answer.

The Court has reviewed all of the depositions taken on July 15th and July 18th that were filed with the Court and has concluded that Turner-Austin spent approximately fourteen pages worth of deposition transcript asking about the subject interrogatory. The Court will, therefore, sanction Mr. Zidell in an amount

14

equivalent to Turner-Austin's expenses associated with fourteen pages worth of deposition transcript. This amount will be calculated by dividing fourteen by three hundred twelve, which is the total number of deposition pages produced during those two days of depositions. Turner-Austin's expenses for attending those depositions will then be multiplied by that fraction.

Similarly, the Court cannot award the total expenses Turner-Austin incurred in preparing the supplemental motion because it deals with many issues other than Plaintiffs' false interrogatory response. The Court, therefore, examined Turner-Austin's time entries in connection with the supplemental motion and has, as best as it can, identified those expenses that are related to the false interrogatory response. Mr. Zidell will be sanctioned for the total amount of these particular time entries.

### C. *Amount of Fees to be Awarded*

Turner-Austin submitted a one-page exhibit, Exhibit D to their detailed statement of fees, in connection with the time it allegedly spent reviewing the false interrogatory response. The Court finds that only three time entries of the ten listed on the page are directly related to Defendants' interrogatories. The other time entries are either duplicative, relate to discovery generally or clearly do not relate to Defendants' interrogatories and Plaintiffs' responses thereto. Out of those three time entries that are related to Defendants' interrogatories and Plaintiffs' responses, the Court will only sanction Mr. Zidell by one-ninth of the

hours billed as he only answered one out of nine interrogatories falsely. The three time entries total $48.00. One-ninth of that amount is $5.33.

Exhibit E to the detailed statement of fees shows Turner-Austin's expenses for attending the depositions of Plaintiffs who submitted the false interrogatory answer. Only the second and third time entries relate to the depositions taken on July 15th and 18th. The first time entry relates to the depositions generally and is thus not directly related to the objectionable interrogatory answer; the other time entries are for depositions taken after July 18th. The two relevant time entries total $2,766.00. The amount billed to Turner-Austin in connection with the fourteen pages of deposition transcripts dealing with the false interrogatory response at the July 15th and July 18th depositions is approximately $124. The Court will not sanction Mr. Zidell in connection with the depositions of the opt-in Plaintiffs as all of those depositions were taken after July 18th.

The last category of expenses deals with the supplemental motion for sanctions. The Court carefully reviewed the nine-page exhibit in support of these expenses, Exhibit I to the detailed statement of fees, and has identified the time entries that are related to the false interrogatory response. Those time entries total $7,775.50. All the other time entries related generally to Turner-Austin's Rule 11 motions and are, therefore, not sanctionable against Mr. Zidell.

Based on the foregoing, Mr. Zidell should be sanctioned a total amount of $7,904.83.[6]

### D. *Turner-Austin's Request for Costs*

Turner-Austin requests that Mr. Zidell also be sanctioned the amount of costs it incurred in attending the depositions and in preparing the supplemental motion. Specifically, Turner-Austin requests that Mr. Zidell be sanctioned $205.82, which were the costs Turner-Austin incurred for attending the depositions of those Plaintiffs that submitted the false interrogatory answer.[7] The Court will not sanction Mr. Zidell in the amount of costs incurred by Turner-

---

[6] Although Mr. Zidell did not challenge the hourly rates charged in Turner-Austin's fee application, we have reviewed those rates in connection with the time entries that should be reimbursed here, and find that such rates are reasonable. Moreover, we have not engaged in an hour-by-hour analysis of those entries in order to eliminate excessive, redundant or unreasonable fees, as the Court's overall task in isolating only those entries that proximately relate to the sanctionable conduct in question has adequately satisfied the Court's obligation to only award reasonable fees in this matter. *See Loranger v. Stierheim,* 10 F.3d 776, 781 (11th Cir. 1994) (court is deemed an expert on the issue of hourly rate and may properly consider "its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value."); *ACLU of Georgia v. Barnes,* 168 F.3d 423, 428 (11th Cir. 1999) (burden of establishing that the time for which compensation is sought was reasonably expended on the litigation is on the fee applicant.; if the party moving for the fees fails to exercise required billing judgment, the Court is obligated to do so by reducing the amount of hours and "pruning out those that are excessive, redundant or otherwise unnecessary").

[7] Turner-Austin also requests that Mr. Zidell be sanctioned $1,401.68, for Turner-Austin's costs in attending the depositions of the Plaintiffs that did not submit the false interrogatory response. The Court already decided that the false interrogatory response did not occasion these depositions; therefore, these costs are not awardable against Mr. Zidell.

Austin in attending the depositions as Turner-Austin would have attended the depositions regardless of the false interrogatory answer.

It further requests that Mr. Zidell reimburse it for $480.00, as Turner-Austin's costs for photocopying and organizing documents used in support of the supplemental motion and associated motions and papers. Turner-Austin does not specify in its detailed statement of expenses what motions and papers were associated with the costs incurred in photocopying and organizing.[8]

The Court has no way of deciphering how much of the $480.00 in costs relate to the false interrogatory response as opposed to Turner-Austin's assertion that the lawsuit was frivolous. As Mr. Zidell's fabrication of evidence is only mentioned in the supplemental motion for sanctions and not in the original motion, the Court only reviewed the exhibits attached to the supplemental motion. The majority of the exhibits relate to whether the lawsuit against Turner-Austin was frivolous, not the false interrogatory response. Out of the one hundred sixty pages of exhibits attached, only ten pages relate to the false interrogatory response. These ten pages consist of the interrogatories that were served on Plaintiffs and a copy of one Plaintiff's answer, containing the false response to the subject interrogatory. The other one hundred fifty pages of exhibits consist of letters to Mr. Zidell requesting that Turner-Austin be dropped from the lawsuit, copies of contracts between Turner-Austin and two contractors, copies of motions

---

[8] Turner-Austin states that Exhibit I to its detailed statement of expenses reflects the costs associated with the supplemental motion and associated motions and papers; however, Exhibit I only contains time entries.

and other papers filed by Turner-Austin, a copy of the Order granting summary judgment in favor of Turner-Austin, a copy of the final judgment in favor of Turner-Austin, copies of Plaintiffs' responses to Turner-Austin's motions for Rule 11 sanctions, and a copy of the interrogatories that were served on the opt-in Plaintiffs.[9] These exhibits all relate to Turner-Austin's assertion that Plaintiffs' lawsuit against it was frivolous and not Mr. Zidell's fabrication of evidence.

The Court will not sanction Mr. Zidell $480.00 for the above-stated reasons. The Court will, however, require reimbursement of photocopying charges at ten cents per page for each of the ten pages of the two exhibits attached to the supplemental motion that related to the false interrogatory response. The Court also notes that Turner-Austin filed thirty-two depositions in support of its supplemental motion for sanctions. Only eleven of these depositions were taken on July 15th and July 18th. These eleven depositions totaled three hundred twelve pages. Mr. Zidell should reimburse ten cents per page as a photocopying charge for each of the three hundred twelve pages of deposition testimony.

Based on the foregoing, Mr. Zidell should be assessed costs incurred as a result of the sanctionable interrogatory answers in the amount of $32.20.

\* \* \*

---

[9] These interrogatories did not ask the question that prompted the false response and are thus unrelated to Mr. Zidell's fabrication of evidence.

## IV.  CONCLUSION

For the reasons set forth herein, an Order granting Turner-Austin monetary sanctions should be entered pursuant to 28 U.S.C. § 1927.  Accordingly, it is hereby **RECOMMENDED** as follows:

1.  An Order Awarding Sanctions against Jamie Zidell, Esq. should be entered in the total amount of $7,937.03 in fees and costs, in favor of Turner-Austin Construction Co.

2.  Mr. Zidell should be provided fourteen (14) days to comply with the Order and satisfy his monetary sanction.[10]

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 27th day of October 2006.

_____
EDWIN G. TORRES
United States Magistrate Judge

Copies provided to:
Honorable Jose E. Martinez
All counsel of record

---

[10]  Pursuant to Local Magistrate Rule 4(b), the parties have **ten (10)** days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable Jose E. Martinez, United States District Judge.  Failure to timely file objections shall bar the parties from a de novo determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings contained herein.  *R.T.C. v. Hallmark Builders, Inc.,* 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger,* 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright,* 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1).